UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ONETTA WOODS,

    Plaintiff,

v.                                                              Case No. 1:08-cv-651
                                                                 Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on December 30, 1955, completed two years of college and has a chauffeur's license (AR 67, 102, 647).[1] She alleges a disability onset date of September 14, 2003 (AR 67). Plaintiff had previous employment as a clerk and a data processor (AR 97). Plaintiff identified her disabling conditions as arthritis, back pain, tailbone pain, foot pain, carpal tunnel syndrome, diabetes, blood pressure problems and depression (AR 96). In her disability report, plaintiff described the limitations posed by her illnesses as follows:

> The pain in my back, feet, hands in doing any sort of activity increases to the point where I can not handle it. This is despite taking pain medications. My hands and feet swell and I have problems with my back. I have low blood sugar attacks which come

---

[1] Citations to the administrative record will be referenced as (AR "page #").

>suddenly and without warning.  I have come close to passing out when I have one of these attacks.

(AR 96).  After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on May 23, 2007 (AR 17-25).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of September 14, 2003 and was insured for DIB through December 31, 2007 (AR 19). At step two, the ALJ found that plaintiff suffered from severe impairments of: diabetes with neuropathy; bilateral carpal tunnel syndrome; degenerative changes in the knees; obesity; and depression (AR 19). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listings of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, particularly Listing 1.00, 9.08 and 12.04 (AR 20). The ALJ decided at the fourth step that plaintiff the claimant had the residual functional capacity (RFC) "to perform simple, unskilled light work (i.e., lifting up to 20 pounds occasionally and 10 pounds frequently, and standing and/or walking and/or sitting for a total of six hours in a normal 8-hour workday)" (AR 20). The ALJ also found that plaintiff was unable to perform her past relevant work (AR 23).

At the fifth step, the AL determined that plaintiff had the RFC to perform a range of light work, which includes the following jobs in the national economy: general office clerk (10,300 jobs); file clerk (7,200 jobs); and cashier (16,000 jobs) (AR 24). Accordingly, the ALJ determined that plaintiff had not been under a disability from September 14, 2003 through the date of the decision and entered a decision denying benefits (AR 24-25).

4

**III. ANALYSIS**

Plaintiff raises four issues on appeal:

**A.  The ALJ failed to give controlling weight to the treating doctor and failed to apply the statutory factors for evaluating the doctor's opinion.**

**B.  The ALJ failed to give good reasons for the weight given to the treating doctor.**

Plaintiff contends that the ALJ failed to give controlling weight to three opinions expressed by her treating physician, Eric K. Gustafson, M.D. (AR 531-32, 607-11, 616-36). In the first opinion, a medical examination report for the Family Independence Agency dated August 14, 2004, Dr. Gustafson stated that plaintiff should never lift more than 25 pounds, that she should avoid repetitive actions with her "hands/arms," that she avoid operating "foot/leg controls," and that she had no mental limitations (AR 531).

In a second opinion, a comprehensive RFC assessment for plaintiff's counsel dated February 7, 2007, the Dr. Gustafson stated that plaintiff: could occasionally lift and carry 10 pounds; could sit for four hours in an 8-hour workday; could never stand or walk in a workday; could occasionally grasp and perform fine manipulation with both hands; could not use her legs and feet for foot controls; could occasionally bend, twist, squat, crawl, stoop, and kneel; had numerous environmental restrictions (e.g., avoid unprotected heights, moving machinery, temperature extremes, chemicals, work outside in cold air, and vibrations); and had sensory limitations with feeling in her hands and feet (AR 608-11).

In a third opinion, contained in a sworn statement given on February, 20, 2007, Dr. Gustafson stated that his office had treated plaintiff since June 2001; that he prescribed her Prozac for depression; that he treated her for Type II diabetes with medications since October 2005; that

5

she suffered from carpal tunnel syndrome; that her peripheral neuropathy was diagnosed in January 2005; that her morbid obesity affected her ability to perform certain activities; and that she suffered from osteoarthritis of the hands, feet, shoulders and back (AR 619-35). Dr. Gustafson testified that he had not "touched base" recently with plaintiff regarding the depression, but had refilled the Prozac at her request since May 2003 (AR 622). Dr. Gustafson diagnosed peripheral neuropathy (numbness, tingling and pain in her feet) clinically and referred plaintiff to a podiatrist (Dr. McGuire) in 2005 (AR 623-24, 629). Plaintiff's blood sugars had been controlled since adding insulin to her medication in October 2005 (AR 623-24). Nevertheless, plaintiff continued to have peripheral neuropathy (AR 623-24). Plaintiff had carpal tunnel syndrome surgery in October 2002, but she did not respond to the surgery and has limitations to grasping, fine manipulation and pushing and pulling up to 10 pounds occasionally (AR 627-28). Dr. Gustafson limited plaintiff's sitting, walking and standing due to the pain and numbness in her feet caused by diabetic neuropathy (AR 629-30). She could sit for three hours at a time, but no more than four hours in a workday (AR 630). While plaintiff's morbid obesity affected her ability to bend, twist, and squat, her principle deficits are related to the carpal tunnel syndrome and peripheral neuropathy (AR 632). Plaintiff's osteoarthritis contributed to her movement restrictions (AR 633-34). Finally, the doctor admitted that he had not taken plaintiff's history regarding employment (AR 635).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating

medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

In this case, the ALJ evaluated Dr. Gustafson's opinions as follows:

> As for the opinion evidence, the assessment of the claimant's treating physician, Dr. Eric Gustafson, dated August 10, 2004 [sic], is inconsistent with the consultative examination done two months later. It is not entirely clear whether Dr. Gustafson actually evaluated plaintiff or just put down what she told him. He admits later in a sworn statement dated February 20, 2007 that the claimant tells him how she feels and she informs him of her limitations. Thus, this assessment is given reduced weight.
>
> The assessment dated February 7, 2007 is also given reduced weight. It [sic] is not sure if the doctor is aware that the claimant is working part-time. Also, the assessment is inconsistent with the consultative examination. It is noted that this document was prepared for the claimant's attorney to assist her in obtaining benefits.
>
> Finally, the sworn testimony of Dr. Gustafson suggests that he was unaware that the claimant is currently working even if part-time. The attorney certainly did not address this. Thus, this is also given reduced weight.

(AR 23) (internal citations omitted).

7

The court agrees with plaintiff that the ALJ has failed to give an adequate basis for the blanket rejection of all of Dr. Gustafson's opinions. The ALJ essentially suggests that Dr. Gustafson formed his opinions based upon plaintiff's self-diagnosis and that the doctor based his opinions on incomplete evidence, not being aware of plaintiff's current work activity. The ALJ's summary dismissal of Dr. Gustafson's three opinions, however, did not set forth "good reasons" for rejection. *See generally*, *Wilson*, 378 F.3d at 545.

While the ALJ found that Dr. Gustafson's August 14, 2004 opinion was inconsistent with the consultative examiner, she did not identify any such inconsistencies. The consultative examination was performed by Donald Sheill, M.D., on October 13, 2004 (AR 22, 275-80). At that time, Dr. Sheill found: that plaintiff weighed 275 pounds; that her blood sugars were not "tightly controlled;" that she had possible end organ damage due to diabetes; that she suffered from arthritis and lumbar pain; that she had a history of carpal tunnel syndrome and was "doing well in that regard;" that her hypertension was in good control; and that she suffered from depression (AR 275-77). Other than her lumbar spine, plaintiff's range of motion was generally normal (AR 278-79). These findings are not necessarily inconsistent with Dr. Gustafson's opinions expressed in August 2004 that plaintiff should not lift over 25 pounds, avoid repetitive actions with her hands and arms, avoid operating foot and leg controls, and had no mental limitations (AR 531).

It would appear that the consultative examination is inconsistent with Dr. Gustafson's more restrictive opinion dated February 7, 2007. However, the court notes that this opinion was given approximately 2 1/2 years after the consultative examination. Dr. Gustafson's opinion indicates that plaintiff's condition worsened during that time period.

8

Finally, the record reflects that plaintiff has performed some work since her alleged disability onset date of September 14, 2003. Plaintiff was a part-time school bus driver during the 2005/2006 school year (AR 649). In addition, at the time of Dr. Gustafson's sworn statement and her administrative hearing, plaintiff was working as a part-time bus monitor for preschoolers (i.e., 1 1/2 hours twice a day for four days a week) (AR 649). The ALJ discounted Dr. Gustafson's opinions because it was unclear whether the doctor knew of this part-time employment. The ALJ's decision appears to discredit Dr. Gustafson's opinion based on mere assumptions of what the doctor knew about plaintiff's work history, and did not explain why the work history was inconsistent with the doctor's findings.

In summary, the ALJ's evaluation of Dr. Gustafson's opinions appears to be based on unsupported generalizations and assumptions regarding the doctor's knowledge of his patient. Despite the fact that the administrative record contains over 300 pages of medical records from Dr. Gustafson's office, the ALJ rejected Dr. Gustafson's opinion without pointing to any medical records that failed to support the doctor's opinion (AR 290-606). This matter should be remanded to the Commissioner for a re-evaluation of Dr. Gustafson's three opinions.

### C.  Substantial evidence does not support the credibility determination.

Next, plaintiff contends that "[t]he ALJ wrongly determines that claimant is only partially credible by unreasonably discounting the testimony of her treating doctor, ignoring her failed attempts at part time work, and disregarding written evidence concerning her daily activities submitted by third parties, herself and her testimony." Plaintiff's Brief at 17. Plaintiff provides no further argument or authority on this conclusory claim of error. The court could typically view this issue waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to

9

in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). However, in this case, the court agrees with plaintiff that the ALJ's credibility determination is not supported by substantial evidence, because that determination relies on an improper evaluation of Dr. Gustafson's opinion. Accordingly, the Commissioner should re-evaluate the credibility issue on remand.

          **D.**      **Substantial evidence does not support the RFC assessment.**

Finally plaintiff contends that the ALJ's blanket dismissal of Dr. Gustafson's opinions regarding plaintiff's limitations prevented the ALJ from making a proper, realistic RFC assessment. The court agrees. An individual's RFC is a medical assessment of what that individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. A claimant's RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). The ALJ cannot determine plaintiff's RFC until she re-evaluates Dr. Gustafson's three opinions. If the Commissioner determines on remand that Dr. Gustafson identified additional limitations, then plaintiff's RFC should be re-evaluated in light of those limitations.

 **IV.	Recommendation**

Accordingly, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  If, upon remand, the Commissioner re-evaluates Dr. Gustafson's three opinions and finds plaintiff  suffers from additional limitations, then the Commissioner should re-evaluate plaintiff at steps four and five of the sequential analysis.


Dated:  May 11, 2009	/s/ Hugh W. Brenneman, Jr.
	HUGH W. BRENNEMAN, JR.
	United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).